J-A19005-14

2014 PA Super 227

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HERBERT RANSON, | |
| Appellant | No. 1331 WDA 2013 |

Appeal from the Judgment of Sentence Entered July 16, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0016897-2012

BEFORE:  BENDER, P.J.E., OLSON, J., and FITZGERALD, J.[*]

DISSENTING OPINION BY BENDER, P.J.E.:          **FILED OCTOBER 8, 2014**

        I must respectfully dissent from the Majority's conclusion that the trial

court did not err when it denied Appellant's pretrial suppression motion.  I

believe the legal conclusions drawn by the trial court from the facts of the

instant case are in error.  Accordingly, I would vacate the court's order and

remand for further proceedings.

        First, as the Majority discusses in a footnote, the trial court's analysis

of the lawfulness of Appellant's seizure includes facts which occurred after

Appellant had been seized by the police.  These facts have no bearing on our

analysis of whether the police possessed reasonable suspicion to detain

_____

[*] Former Justice specially assigned to the Superior Court.

Appellant. The Majority ultimately dismisses this as harmless error. I believe a deeper analysis of the facts of the instant case is warranted given that the suppression court's ruling is unsustainable. Significantly, these facts were considered in error by the trial court as evidence of Appellant's attempts to evade the police, and the Majority rests its holding, at least in part, on the fact that Appellant ostensibly attempted to evade the police. Therefore, great care must be taken in our review of the record in this case.

I would not conclude the record supports the finding that Appellant's actions prior to the seizure were suspicious or evasive. On direct examination, Officer Curry testified that Appellant was "facing toward us" when the police initially approached him. N.T., 5/16/13, at 9. On cross-examination, Officer Curry testified more specifically that when Appellant was initially approached by the police, he was "leaning directly against the corner of the building," "facing the front entrance to the club." *Id.* at 18, 19. When asked, "Was [Appellant's] back towards you as you approached him or was it his face towards you or his side," Detective Curry answered, "His side." *Id.* at 19. I am not convinced that the record establishes Appellant made eye contact with the officers; instead, the testimony of the police officer was that Appellant was "staring at the front of the club." *Id.* at 19. Nor do I think the record establishes that Appellant was aware that he was being approached by the police when he began walking away. I would also note that the suppression court did not make a determination as to

whether Appellant was facing the police, or saw the police, as they approached.

Moreover, the police officer testified that Appellant put his hands in his pockets as he began to walk away. *Id.* at 9. However, there was no testimony offered in the instant case to establish that the act of putting one's hands in his pockets is "hand movements that police know, based on their experience, are associated with the secreting of a weapon." *Commonwealth v. Foglia,* 979 A.2d 357, 360 (Pa. Super. 2009). This case is distinguishable from *Foglia*, upon which the Majority relies, where such testimony was part of the record. *Id.* at 359. Furthermore, there was no testimony that Appellant did anything more with his hands prior to the seizure. I am unable to conclude, given the record before me, that this gesture provided justification to stop Appellant.

Finally, I disagree with the trial court's conclusion that the tip provided to police was "something a little bit more than an anonymous caller" and, therefore, that the tip justified Appellant's seizure. N.T., 5/16/13, at 2 – 3. Our Court has held with regard to the reliability of tips:

> [W]e must determine whether under the 'totality of circumstances' the informant's tip established the necessary reasonable suspicion that criminal activity was afoot. [Both] quantity and quality of information are considered when assessing the totality of the circumstances. If information has a low degree of reliability, then more information is required to establish reasonable suspicion.

*Commonwealth v. Hayward*, 756 A.2d 23, 28 (Pa. Super. 2000) (internal citations omitted). In its brief, the Commonwealth concedes,

> *Hayward* does seem to indicate that in order to establish the veracity of information provided by a tipster, the officer would need to know the person's name or be aware that this individual had provided accurate and reliable information to the police in the past, *see id*. at 34 – 35, and the Commonwealth would acknowledge that was not the case in this matter.

Commonwealth's brief at 12.[1] Nor does my review of the record reveal that this tip had any particular indicia of reliability. The tipster never told the police how he knew Appellant had a gun, or where the gun was located on Appellant's person. The tipster described Appellant's clothing and facial hair to the police; this fact does not establish the reliability of the tip, however, as Appellant was visible to the tipster and to the police while that information was being provided. N.T., 5/16/13, at 6. Put another way, a tipster can walk up to a police officer and simply point at the first person they see on the street; the fact that such a gesture is not vague does not

_____

[1] At oral argument before this Court, the Commonwealth attempted to analogize the instant case to the recent holding of the Supreme Court of the United States in *Navarette v. California*, 134 S.Ct. 1663 (2014). There, the Court held that an anonymous 911 call "bore adequate indicia of reliability for the officer to credit the caller's account," and constituted a reliable tip. *Navarette*, 134 S.Ct. at 1688. The *Navarette* Court relied upon that fact that "[a] 911 call has some features that allow for identifying and tracing callers, and thus provides some safeguards against making false reports with immunity," such as the fact that calls are recorded, incoming phone numbers are displayed to 911 dispatchers, and 911 systems can locate a caller's geographic location. *Id.* at 1689 - 1690. The facts of the instant case are clearly distinguishable, and no such safeguards establishing reliability were in place. Here, the tipster did not provide (and the police did not obtain) any identifying information that would allow the police to follow up with the unnamed club patron, unless he fortuitously chose to return to the nightclub in the future. Thus, I believe the Commonwealth's reliance on *Navarette* is unpersuasive.

necessarily render it reliable. The police did not know the tipster's name, and he did not identify himself to the police or provide contact information. It appears the police never spoke to him again. *Id.* at 24. The Majority places great weight on the fact that the police had the opportunity to assess the tipster's demeanor, knowledge, and ability to perceive Appellant. I would note, however, that very little testimony was actually offered at the suppression hearing regarding the officer's observations of the tipster. I believe more information than this tip was required to establish reasonable suspicion.

Accordingly, I would conclude that the totality of the circumstances in this case did not establish reasonable suspicion to justify the police officers' seizing Appellant, and that the trial court erred in denying Appellant's pretrial motion to suppress.