J-S40013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MASON FLANDERS | : | No. 470 EDA 2017 |

Appeal from the Order January 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008117-2016

BEFORE:   LAZARUS, J., DUBOW, J., and PLATT, J.*

MEMORANDUM BY DUBOW, J.:                **FILED SEPTEMBER 26, 2018**

The Commonwealth of Pennsylvania appeals from the January 13, 2017 Order entered in the Philadelphia County Court of Common Pleas granting Mason Flanders's Motion to Suppress physical evidence and a statement he made to police.  Because we conclude that the arresting officer had reasonable suspicion to stop Flanders for a brief investigation, we reverse the trial court's suppression ruling and remand for further proceedings.

On August 17, 2016, Philadelphia Police Officer Timothy Dollarton arrested Flanders for Carrying a Firearm without a License and Carrying a Firearm in Public in Philadelphia.[1]

Flanders filed an Omnibus Pretrial Motion on October 6, 2016, which included a Motion to Suppress the firearm seized by Officer Dollarton.

---

[1] 18 Pa.C.S. § 6106(a)(1) and 18 Pa.C.S. § 6108, respectively.

---

*   Retired Senior Judge assigned to the Superior Court.

The court held a hearing on the Motion on January 13, 2017. At the commencement of the hearing, Flanders's counsel informed the court that Flanders also sought to suppress statements he had made to Officer Dollarton.

Officer Dollarton, a 4-year veteran of the Philadelphia Police Department, was the Commonwealth's sole witness at the suppression hearing. He testified that on the afternoon of August 17, 2016, he was patrolling in the area of the 6000 Block of Buist Avenue in Philadelphia in a marked police vehicle.[2] N.T., 1/13/17, at 6, 8. At approximately 3:50 PM, while stopped at a traffic light at the intersection of Buist Avenue and 61st Street, he saw Flanders begin to cross the street approximately 25 feet in front of him.[3] *Id.* at 6-7. Officer Dollarton testified that, as soon as Flanders started walking, he noticed a bulge on the right side of the waistband of Flanders's pants, in the same area where Officer Dollarton places his own firearm. *Id.* at 8, 11. He testified that Flanders was walking "normal[ly]," with both arms swinging. *Id.* at 8-9. Officer Dollarton then testified that Flanders looked in the direction of the police vehicle, immediately after which Flanders stopped swinging his right arm and held it still over the bulge. *Id.* at 8-9.

---

[2] Officer Dollarton testified that this is a high-crime area where there are many shootings, robberies, illegal narcotics, and gun crimes, and that he had, on one occasion, personally observed a shooting a half block from the location of the instant stop. N.T., 1/13/17, at 6.

[3] Officer Dollarton described Flanders as wearing jeans and an untucked grey t-shirt that was not baggy. *Id.* at 11-13. He described Flanders's jeans as "regular fit . . . not particularly baggy, not particularly tight." *Id.* at 18.

Officer Dollarton testified that, after Flanders took a few more steps, he again looked in Officer Dollarton's direction, then stopped in the middle of the crosswalk, and turned his body away from Officer Dollarton so that Flanders's back was facing Officer Dollarton. *Id.* at 9-10. Officer Dollarton testified that, from that vantage point, he again saw the bulge in Flanders's waistband. *Id.* at 10. Officer Dollarton described Flanders as moving erratically across the crosswalk, changing directions multiple times as he did so, all the while holding his right arm across the area where Officer Dollarton had seen the bulge in his waistband. *Id.* at 9-12.

Officer Dollarton recounted that he then drove his patrol vehicle directly toward Flanders, exited his vehicle, and told Flanders to put his hands on the hood of the police vehicle. *Id.* at 13. Officer Dollarton testified that, without any prompting, Flanders announced to him that he had "just found it in the alley." *Id.* Officer Dollarton explained that he believed Flanders was referring to the firearm that Officer Dollarton suspected Flanders had in his waistband. *Id.* at 14.

Officer Dollarton testified that he then frisked Flanders in the area where he saw the bulge and found the firearm. *Id.*

At the conclusion of the hearing, the trial court granted Flanders's Motion to Suppress the firearm and his statement, concluding that Officer Dollarton lacked reasonable suspicion to stop Flanders. *Id.* at 32-33.

The Commonwealth timely appealed, certifying that the suppression order terminates or substantially handicaps its prosecution. *See* Pa.R.A.P. 311(d).

The Commonwealth raises the following issue on appeal:

Did the lower court err in concluding that Officer Dollarton did not have reasonable suspicion to stop [Flanders] and therefore the gun he found on him and the statement [Flanders] blurted out had to be suppressed?

Commonwealth's Brief at 4.

The Commonwealth challenges the trial court's order granting Flanders's Motion to Suppress. Our standard of review on such matters is well-settled:

When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review. We consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. In appeals where there is no meaningful dispute of fact, as in the case *sub judice*, our duty is to determine whether the suppression court properly applied the law to the facts of the case.

***Commonwealth v. Arthur***, 62 A.3d 424, 427 (Pa. Super. 2013) (internal citations and quotation marks omitted).

The Commonwealth argues that the court erred as a matter of law in granting Flanders's Motion to Suppress because the totality of the circumstances indicated that Officer Dollarton had reasonable suspicion to stop Flanders. Commonwealth's Brief at 12-13.

- 4 -

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from . . . [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Boswell*, 721 A.2d 336, 340 (Pa. 1997) (OAJC). Here, the parties and the court agree that Officer Dollarton subjected Appellant to an investigative detention.

When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot.

"When conducting a *Terry* analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present." *Commonwealth v. Carter*, 105 A.3d 765, 769 (Pa. Super. 2014). In order to justify an investigative detention, a police officer must be able to identify

"specific and articulable facts" leading her to suspect that criminal activity is afoot. **Terry**, 392 U.S. at 21.

In determining whether an officer's stop of a defendant was supported by reasonable suspicion, the court must consider the totality of the circumstances, and give due weight to the reasonable inferences the officer drew from the facts based upon his experience. **Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*).[4] "[E]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Id.** (citation omitted). **See also Carter**, 105 A.3d at 771-72 (concluding that the suppression court undermined the "totality of the circumstances" approach that should be used to determine whether a police officer had reasonable suspicion by evaluating individual factors in isolation).

The suppression court is not foreclosed from concluding that a police officer had reasonable suspicion even where the defendant's conduct was equally consistent with innocent activity. **Carter**, 105 A.3d at 772. **See also Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa. Super. 2014) (explaining that although the item weighing down the defendant's pocket could have been something other than a gun, that did not mean that it was unreasonable for

---

[4] In **Foglia**, the totality of the circumstances supporting the officer's reasonable suspicion included the appellant's presence in a high crime area, common knowledge that offenders hide firearms in waistbands, and the experienced officer's observation of hand movements associated with secreting of a weapon. **Foglia**, 979 A.2d at 361-62.

the police officer to suspect, based on the totality of the circumstances, that it was a gun).

Moreover, reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." ***Navarette v. California***, 134 S.Ct. 1683, 1687 (2014). ***See also Commonwealth v. Fink***, 700 A.2d 447, 449 (Pa. 1997) (explaining that reasonable suspicion is less than a "certainty, a preponderance, or even a fair probability.").

Here, the suppression court found that Officer Dollarton lacked reasonable suspicion to subject Flanders to a non-custodial investigative stop based on two facts: (1) that the Commonwealth did not offer evidence "to refute the fact that there is no law that makes it illegal, when you're in the middle of a crosswalk, to change your mind and change direction;" and (2) that "there is no legal requirement for someone to move their arms when they walk." Supp. Ct. Op., 5/24/17, at 5-6. The court nonetheless concluded that, viewing the facts "in their totality," Officer Dollarton "did not have reasonable suspicion that [Flanders] was engaged in criminal activity, or that [he] may have been in possession of a weapon in furtherance of criminal activity." ***Id.***

We disagree that the trial court reviewed the facts "in their totality" before granting the Motion to Suppress.

While changing directions in a crosswalk and holding one's arm still across one's waistband may not alone support a finding of reasonable suspicion, contrary to the suppression court's conclusion, those two circumstances do not represent the totality of the circumstances. Rather, the

totality of the circumstances included the fact of the area's high crime rate, Officer Dollarton's 4-plus years of experience, his prior observation of a shooting within a block of the instant location, and his observation of a bulge in Flanders's waistband. Combined with Flanders's suspicious behaviors described above, these circumstances supported Officer Dollarton's reasonable suspicion that criminal activity was afoot.

Given the totality of the circumstances, we conclude that the suppression court erred as a matter of law in finding that Officer Dollarton lacked reasonable suspicion to conduct an investigatory stop of Flanders. Accordingly, we reverse and remand the case for further proceedings consistent with this Memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/18