J-A30007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CODY WILLIAM GREEN | : | |
| | : | |
| Appellant | : | No. 172 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 28, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003390-2018

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 15, 2020**

Appellant, Cody William Green, appeals from the December 28, 2018 Judgment of Sentence entered in the Court of Common Pleas of York County following his conviction of one count each of Possession with Intent to Deliver, Criminal Use of a Communication Facility, and Possession of Drug Paraphernalia.[1] On appeal, Appellant challenges the denial of his Motion to Suppress. After careful review, we affirm.

We glean the following factual and procedural history from the trial court Opinion and evidence from the suppression hearing. On the evening of December 15, 2017, Patrol Officer Randy Wagner of the West Manheim

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 7512(a); and 35 P.S. § 780-1113(a)(32), respectively.

Township Police Department was on patrol in a fully marked police cruiser. Around midnight, he observed two vehicles, a black Toyota sedan and silver Honda SUV, parked in an unlit area of the Mary Ann Furnace Trail parking lot of Codorus State Park. Neither vehicle had boating equipment attached or other signs of park recreation activities. The parking area has posted signs that it is closed from dusk to dawn unless park patrons are participating in approved park activities.

Upon seeing the vehicles in the unlit parking lot, Patrol Officer Wagner pulled behind the vehicles and activated his emergency lights. A passenger exited the SUV and informed Patrol Officer Wagner that he and the driver, Appellant, had met up in the parking lot because he had left his license in the SUV. While he was talking to the passenger, Officer Wagner smelled marijuana emanating from the SUV. The passenger informed Officer Wagner that he had smoked marijuana in his vehicle prior to driving to the park and indicated that he had some drug paraphernalia in his black sedan. Officer Wagner notified dispatch and requested a second unit for assistance.

Patrol Officer Wagner then patted down the passenger. Appellant exited the SUV, and Officer Wagner also patted him down for weapons; Officer Wagner felt a bulge in Appellant's crotch area, which made a noise that sounded like plastic or paper.

After the second unit arrived, Officer Wagner searched Appellant and determined that the bulge was caused by a clear plastic bag containing 61.2

grams of marijuana wax and paper wrapped around a glass container with marijuana concentrate and four empty round plastic containers. Officer Wagner conducted a search of Appellant's white SUV and found $2,208 in cash in the armrest.

The passenger then informed the officers that he was in the park to purchase marijuana from Appellant and that he had used the telephone application, Snapchat, to arrange the drug transaction. The officers subsequently obtained a search warrant for Appellant's telephone. The search of his phone confirmed that the drug transaction was arranged through Snapchat and text messages. Appellant was charged with, *inter alia*, the above crimes.[2]

Appellant filed an Omnibus Pretrial Motion on August 6, 2018, which included a Motion to Suppress all evidence seized after Officer Wagner had turned on his emergency lights. The court held a suppression hearing on October 3, 2018, at which Officer Wagner testified. On November 19, 2018, the court denied Appellant's Motion.

On December 28, 2018, after a stipulated bench trial, the trial court found Appellant guilty of the above charges and sentenced him to an aggregate term of three years of probation.

---

[2] The Commonwealth also charged Appellant with False Identification, but he was acquitted of that charge.

Appellant filed a timely notice of appeal. Appellant and the trial court complied with Rule 1925.

Appellant raises the following issue on appeal: "Whether Officer Wagner had reasonable suspicion to detain [Appellant] because he parked his vehicle in a state trail parking lot that allows after hour[s] parking for park-approved activities; and when Officer Wagner could not see inside [Appellant's] vehicle and did not observe [Appellant] engaged in any criminal activity." Appellant's Br. at 4.

We review the trial court's decision to deny a motion to suppress to determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Milburn**, 191 A.3d 891, 897 (Pa. Super. 2018) (citation omitted). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Commonwealth v. Freeman**, 150 A.3d 32, 34 (Pa. Super. 2016). We are bound by the suppression court's factual findings where they are supported by the record, and we may reverse only if the court's legal conclusions are erroneous. **Id.** at 35. Because this Court's mandate is to determine if the suppression court properly applied the law to the facts, our scope of review is plenary. **Id.**

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of our state Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from . . . [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). Our Supreme Court has defined three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Boswell*, 721 A.2d 336, 340 (Pa. 1998). Both parties agree that when Officer Wagner parked his police vehicle to block Appellant's SUV and the black Toyota sedan, Officer Wagner was engaging in an investigatory detention.

When evaluating the legality of investigative detentions, Pennsylvania has adopted the holding of *Terry v. Ohio*, 392 U.S. 1 (1968), wherein the United States Supreme Court held that police may conduct an investigatory detention if they have reasonable suspicion that criminal activity is afoot. "When conducting a *Terry* analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante*, whether an objective basis for the seizure was present." *Commonwealth v. Carter*, 105 A.3d 765, 769 (Pa. Super. 2014). In order to justify an investigative detention, a police officer must be able to identify "specific and

articulable facts" leading him to suspect that criminal activity is afoot. **Terry**, 392 U.S. at 21.

In determining whether an officer's stop of a defendant was supported by reasonable suspicion, the court must consider the totality of the circumstances, and give due weight to the reasonable inferences the officer drew from the facts based upon his experience. **Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*). "[E]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Id.** (citation omitted). The suppression court is not foreclosed from concluding that a police officer had reasonable suspicion even where the defendant's conduct was equally consistent with innocent activity. **Carter**, 105 A.3d at 772. **See also Commonwealth v. Davis**, 102 A.3d 996, 1000 (Pa. Super. 2014) (explaining that although the item weighing down the defendant's pocket could have been something other than a gun, that did not mean that it was unreasonable for the police officer to suspect, based on the totality of the circumstances, that it was a gun).

When evaluating whether reasonable suspicion existed in a particular case, this Court must "view the circumstances through the eyes of a trained officer, not an ordinary citizen." **Commonwealth v. Riley**, 715 A.2d 1131, 1135 (Pa. Super. 1998). "Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of

reliability." ***Commonwealth v. Wiley***, 858 A.2d 1191, 1194 (Pa. Super. 2004) (citation omitted).

Moreover, reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." ***Navarette v. California***, 572 U.S. 393, 397 (2014). ***See also Commonwealth v. Fink***, 700 A.2d 447, 449 (Pa. 1997) (explaining that reasonable suspicion is less than a "certainty, a preponderance, or even a fair probability.").

Appellant contends that Officer Wagner illegally detained Appellant because he lacked reasonable suspicion that Appellant was involved in criminal activity at the time of the search. Appellant's Br. at 9-11. He asserts that Officer Wagner was unaware that he was engaged in illegal activity until after he was detained and that the location of "expected criminal activity" does not amount to reasonable suspicion. ***Id.*** at 13-15.

The suppression court found that Appellant was parked in an area marked closed in violation of State Park regulations and concluded that there were sufficient articulable facts for Officer Wagner to investigate and detain Appellant. Trial Ct. Op., dated 3/25/19, at 5-6.

Officer Wagner testified that he had made arrests at the Mary Ann Furnace Trail parking lot, after hours, related to "drugs and alcohol, underage and DUIs[.]" ***Id.*** Therefore, based on his knowledge of the lot and his observation of the vehicles parked in violation of the posted signs, he turned

on his emergency lights, exited the car, and approached the vehicles. *Id.* at 16.

The totality of circumstances—Officer Wagner's knowledge and experience concerning the reputation of the Mary Ann Furnace Trail parking lot after hours and his observation of the two vehicles parked side-by-side in the unlit lot after hours without any obvious signs of park recreational equipment—establish that Officer Wagner had specific and articulable reasonable facts that led him to suspect that criminal activity was afoot. Accordingly, we conclude that the suppression court's factual findings are supported by the record and discern no error in its denial of Appellant's Motion to Suppress.

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/15/2020