J-S71009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMAL T. ADAMS :
:
Appellant : No. 3425 EDA 2018

Appeal from the Judgment of Sentence Entered October 26, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000043-2018

BEFORE: BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.: **FILED MARCH 13, 2020**

Jamal Adams appeals from his October 26, 2018 judgment of sentence

of five to ten years of incarceration, and a concurrent seven-year term of

probation, imposed following his convictions of possession of a firearm

prohibited, carrying a firearm without a license, and carrying a firearm on a

public street in Philadelphia. After thorough review, we affirm.

The trial court summarized the facts as followed:

On December 17, 2017, at approximately 3:55 p.m.,
Philadelphia Police Officer John Cole and his partner were directed
to the intersection of Frankford Avenue and Orleans Street, a high
crime area, to investigate a report of a man with a gun and shots
fired. (N.T., 8/30/18; at 8-10). The report described the suspect
as a black male with tattoos on his face, wearing a green jacket
and gray sweatpants. *Id*. at 10, 18. Upon arrival, Officer Cole,
who estimated that he had made twenty arrests for guns, was
informed by several neighbors that they heard gunfire. *Id*. at 11.
In response thereto, Officer Cole and his partner began driving
around looking for a male matching the description in the radio
call. *Id*. at 8-10.

While driving north on the 2900 block of Emerald Street towards Orleans Street, Officer Cole saw a male (Appellant herein) outside a convenience store whose clothing matched the description of the suspect. *Id*. at 11-12, 15-16, 26. Officer Cole estimated that less than two minutes elapsed between the radio call and his observations of Appellant who was standing fifty feet away from him at the time. *Id*. at 12-13.

As the officers approached, Appellant looked in the officers' direction, stood up, grabbed his waistband, and entered a convenience store. *Id*. at 12-13, 19. The officers entered the store, which was occupied only by Appellant and a store clerk, and ordered Appellant, who was sitting down, to stand up. *Id.* at 13. Appellant complied with the request and, as he did so, Officer Cole noted that Appellant'[s] gait was "weird" as he stood up hesitantly. *Id*. at 13. The officers asked Appellant to walk outside [to speak with them] and Officer Cole observed that there were bulges in Appellant's baggy coat. *Id.* at 13. Upon observing the bulges and given the nature of the radio call (a man with a gun), Officer Cole frisked Appellant and felt an object in Appellant's waistband that he immediately recognized as a handgun based on his training and experience with firearms. *Id*. at 14. Officer Cole recovered the firearm and placed Appellant in handcuffs. *Id*. at 14.

After Appellant was placed under arrest, Officer Cole took biographical information from Appellant. *Id*. at 16-17. Appellant initially gave the officer two false names[1] before telling the officer his real name. *Id*. at 17.

The gun seized by Officer Cole was a Taurus .9 millimeter handgun loaded with five live rounds. *Id*. at 48. The gun was tested and was operable. *Id*. at 48. Finally, Appellant did not have a license to possess a firearm. *Id*. at 48.

Trial Court Opinion, 4/8/19, at 2-3.

---

[1] The notes of testimony from the suppression hearing indicate that Appellant supplied one false name as opposed to two. (N.T. Suppression Hearing, 8/30/18, at 17).

Appellant was arrested and charged with several firearms offenses. He filed a motion to suppress the handgun on the ground that Officer Cole did not have reasonable suspicion for the investigative stop and the ensuing frisk. Following a hearing, the court denied suppression. A waiver trial immediately proceeded. At its conclusion, the court convicted Appellant of all charges.

Appellant was sentenced on October 26, 2018, and he timely appealed. Appellant complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court issued its opinion pursuant to Pa.R.A.P. 1925(a). Appellant raises two issues on appeal:

I. Did the trial court err when it denied [Appellant's] pre-trial motion to suppress physical evidence where:

- The police subjected [A]ppellant to an investigative detention without reasonable suspicion because the initial information provided to police was anonymous, [A]ppellant did not match the description provided by the anonymous tipster, and the observations made by police did not provide reasonable suspicion to believe that criminal activity was afoot which [A]ppellant was involved in?

II. Did the trial court err when it denied [Appellant's] pre-trial motion to suppress physical evidence where:

- The police exceeded the permissible scope of the interaction permitted during an investigative stop when they frisked [A]ppellant because the facts known to the officer at the time the frisk occurred were not sufficient to establish that [A]ppellant was currently armed and dangerous?

Appellant's brief at 5.

Initially, we delineate our standard of review of challenges to a suppression court's ruling:

- 3 -

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa.Super. 2015) (internal citations and quotation marks omitted)).

Appellant challenges both the propriety of the original stop and the ensuing pat down for weapons.[2] Without analyzing the nature of the encounter between Appellant and the police, the parties appear to agree that the interaction herein constituted an investigative detention that required reasonable suspicion. An investigative detention "subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest." *Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995).

---

[2] Our review of the suppression transcript indicates that Appellant initially conceded at the suppression hearing that the stop was legal, and challenged only the frisk. N.T., 8/30/18, at 30. Appellant's counsel asked the court "to find that while the stop of my client was not impermissible[,] . . . the pat-down of him was impermissible." *Id*. However, Appellant subsequently argued that he was subjected to "a stop and frisk of his person, without the requisite belief that he was armed and dangerous," and based on a generic description that did not match his appearance. *Id*.

Appellant contends that the trial court erred in concluding that Officer Cole had reasonable suspicion to subject him to an investigative detention. He alleges first that the officers were acting in response to an anonymous tip that a black male with facial tattoos, wearing a green jacket and gray pants, and carrying a firearm was involved in a gunfire incident. He maintains that the anonymous tip did not provide reasonable suspicion to detain him as he was not at the location of the crime, and did not match the description as he had no facial tattoos and was not wearing sweatpants. He argues that the officers' additional observations, *i.e.*, that he was sitting in front of a convenience store in a high crime area, that he got up, grabbed his waistband, and walked into the store as uniformed police officers approached, were not enough to establish reasonable suspicion.

As the trial court correctly noted, in order "[t]o establish grounds for 'reasonable suspicion'. . . the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him to reasonably conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." ***Commonwealth v. Houck***, 102 A.3d 443, 456 (Pa.Super. 2014) (internal citations omitted). In making that determination, the court must consider the totality of the circumstances as seen through the officer's eyes.

The trial court found that "the information possessed by the police when they encountered Appellant was sufficient to conduct an investigative

detention." Trial Court Opinion, 4/8/19, at 5. In support of that conclusion, the court noted that the officers observed Appellant dressed in clothing that matched the flash description less than two minutes after receiving the report. When Appellant saw the officers, he immediately stood up, adjusted his waistband, and walked into the store. The court held that these facts were sufficient to detain Appellant for investigative purposes, citing this Court's *en banc* decision on very similar facts in *Commonwealth v. Foglia*, 979 A.2d 357 (Pa.Super. 2009).

In *Foglia*, police officers on routine patrol at approximately 2:40 a.m. in a high crime area received a radio broadcast reporting an anonymous tip that there was a man standing on a particular corner, dressed in dark clothing, and carrying a firearm. The officers arrived at that location in less than two minutes, and extinguished the lights on their vehicle to avoid detection. They observed two males, one of whom was clothed entirely in black, the other in a gray suit. When the two men saw the officers, they "began walking away" from the cruiser. *Id*. at 359. The man wearing black clothing, later identified as defendant Foglia, "looked back several times" as he continued walking. *Id*. The two officers stopped and exited their vehicle. Foglia "grabbed around his waist area" and "sat on some steps behind two females." *Id*. The officer ordered Foglia to stand, informed him that they were investigating a "male with a gun that fit his description," and immediately patted him down. The

officer felt the butt of a handgun in Foglia's waistband, and retrieved it. When Foglia admitted he did not have a permit to carry, he was arrested.

Foglia filed a motion to suppress, which the suppression court denied, finding reasonable suspicion for the detention. On appeal, this Court reaffirmed that police cannot initiate an investigative detention solely upon "an anonymous tip that a person matching the defendant's description in a specified location is carrying a gun." *Id*. at 360 (citing *In the Interest of D.M.*, 781 A.2d 1161 (Pa. 2001)). However, we held that additional observations of suspicious behavior, such as flight or nervous, evasive conduct, as well as presence in a high crime area close in time to the receipt of the tip, were relevant factors in determining whether there was reasonable suspicion to stop and detain a person. *See id*. We noted further that hand movements associated with a secreted weapon "will buttress the legitimacy of a protective weapons search of the location where the hand movements occurred." *Foglia*, *supra* at 361 (citing *In the Interest of O.J.*, 958 A.2d 561 (Pa.Super. 2008) (*en banc*)). Finally, we concluded that the suppression court's factual findings were supported by the record, and that the pat down search of Foglia was constitutionally permitted.

Appellant contends that *Foglia* is inapposite as Appellant did not match the description in the flash. He points to his lack of facial tattoos and gray pants that were not sweatpants. Appellant argues further that since he did not exactly match the description from the flash report, reasonable suspicion

would have to rest on Officer Cole's observations alone. Appellant's brief at 37. Appellant cites **Commonwealth v. Kue**, 692 A.2d 1076 (Pa. 1997), and **Commonwealth v. Jackson**, 698 A.2d 571 (Pa. 1997), for the proposition that the fact that a suspect matches the description provided in an anonymous tip alone does not supply probable cause nor meet the requisite level of suspicion to support an investigative detention, absent other sources of suspicion. Appellant's brief at 27-37. Appellant sums up the officer's observations as "a man wearing a coat in the winter stand[s] up, touch[es] his waist, and walk[s] into a store during midday business hours." **Id**. He contends that these circumstances did not provide reasonable suspicion to detain him. **Id**.

Moreover, Appellant contends he was not at the specific location described in the police flash, but a few blocks away. **Id**. at 36-37, 40. He was observed mid-afternoon as opposed to late at night. **Id**. Appellant maintains he did not continue to walk away when the officers approached. **Id**.

Finally, Appellant cites **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), for the proposition that an officer's belief that an individual is carrying a weapon does not alone provide reasonable suspicion for an investigative detention.

The trial court found that the officers observed Appellant in close geographical proximity within two minutes of the report of a man with a gun and shots fired. Trial Court Opinion, 4/8/19, at 6. Appellant's clothes matched

the description from the anonymous source. *Id*. Appellant immediately attempted to elude the police upon seeing them, and grabbed his waistband in a way that Officer Cole knew from personal experience indicated the possession of a firearm. *Id*. The trial court also found that the interaction with Appellant took place in a high crime area both temporally and geographically proximate to the reported shooting. *Id*. at 5-6. Thus, there were numerous facts that provided reasonable suspicion for police to detain Appellant. The trial court concluded that there were sufficient circumstances corroborative of the anonymous tip to justify the investigative detention. *Id*. at 6.

We are bound by the factual findings of the trial court as they are supported by the record and uncontroverted. Furthermore, we find unpersuasive Appellant's attempt to distinguish *Foglia*. He cites no authority in support of his assertion that anything short of an identical match to a description cannot be considered in examining the totality of the circumstances. *See* Appellant's brief at 37. This Court held to the contrary in *Commonwealth v. Walls*, 53 A.3d 889, 894 (Pa.Super. 2012), concluding that a perfect match to a description is not required; any discrepancies are part of the totality of the circumstances. In *Walls*, the fact that the defendant's gun was not on his hip per the flash description did not void his match to the remainder of the description. In *Commonwealth v. Ellis*, 662 A.2d 1043, 1048 (Pa. 1995), our Supreme Court rejected the notion that "the

existence of a single fact contradictory to [a] police radio broadcast required an officer to ignore these other incriminating factors." In that case, the Court held that the police had reasonable suspicion to detain the appellant and his friend even though the flash described the suspects as white or "Mexican," and the appellant and his companion were African-American. Nor do our decisions in *Kue* and *Jackson* offer support for Appellant's position. In stopping Appellant, the police officers herein did not rely solely on the fact that Appellant matched the description.

Appellant's reliance on *Hicks* is similarly misplaced. In *Hicks*, our High Court rejected the *per se* rule enunciated in *Commonwealth v. Robinson*, 600 A.2d 957 (Pa.Super. 1991), that an officer's belief that a suspect was carrying a firearm could **alone** justify a finding of reasonable suspicion. The Court, however, reaffirmed the notion that behavior indicative of the presence of a firearm contributes to the totality of the circumstances in determining whether there is reasonable suspicion to investigate further. In rejecting the **Robinson** rule, the Supreme Court explicitly stated that the rule was inconsistent with the constitutionally required totality of the circumstances analysis, and clarified that it was not rejecting the idea that "the possession of a firearm can **never** be suspicious. It can certainly be." **Id**. at 938-39 (emphasis original).

Herein, Appellant was not detained solely because he matched the description provided in an anonymous tip or because police suspected he was

carrying a firearm. He was stopped because he matched the flash description of a man involved in gunfire, was located in close temporal and geographical proximity to the incident, grabbed his waistband in manner suggestive of one carrying a firearm, and took action to evade police. The record supports the trial court's conclusion that the totality of the circumstances provided reasonable suspicion to detain Appellant for investigative purposes.

Appellant's second claim is that the trial court erred in denying his motion to suppress as the frisk by Officer Cole was unsupported by the requisite reasonable suspicion. Again, our standard of review is limited to whether the suppression court's factual findings are supported in the record and its legal conclusions are correct. *Jones*, *supra*.

In order to conduct a legitimate *Terry*[3] stop and frisk, an officer must have reasonable suspicion supporting two beliefs: first, that there is "criminal activity afoot," and second, that the individual subject to the investigative stop is "armed and presently dangerous." *Commonwealth v. Guess*, 53 A.3d 895, 901 (Pa.Super. 2012) (internal citations omitted). Our High Court stated it another way in *Hicks*, *supra*:

> First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a **frisk**, the police officer must reasonably suspect that the person stopped is armed and dangerous.

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

*Hicks*, *supra*, at 921. "[T]he purpose of this limited search is . . . to allow the officer to pursue his investigation without fear of violence." *Guess*, *supra* at 901 (quoting *Commonwealth v. Simmons*, 17 A.3d 399, 403 (Pa.Super. 2011)).

The thrust of Appellant's argument is that the *Terry* frisk was improper herein as Officer Cole had no reason to believe that Appellant was both armed **and** dangerous. *See* Appellant's brief at 44-46. Appellant contends that since he did not match the description offered by the police flash, Officer Cole had no reasonable suspicion that he had committed the "violent crime" reported in the anonymous tip or was dangerous. *Id*. at 45. Appellant concludes his argument by citing to our High Court's decision in *Hicks*, *supra*, for the proposition that Officer Cole's suspicion that he was carrying a firearm could not alone have supported the frisk. *Id*. at 46.

We have previously determined that the totality of the circumstances provided reasonable suspicion to detain Appellant for further investigation of his possible role in a violent crime involving a firearm. Thus, the first requirement for a valid *Terry* frisk, a lawful detention, was satisfied. Furthermore, the nature of the crime being investigated supplied reason to believe that the perpetrator was both armed and dangerous. *See Commonwealth v. Jackson*, 519 A.2d 427 (Pa.Super. 1986) (recognizing that police may reasonably believe themselves to be in danger when the reported crime is a violent one, where the perpetrator was reported to possess

- 12 -

or have used a weapon, police observe sudden or threatening moves, or note suspicious bulges in a suspect's clothing). In determining whether reasonable suspicion existed to support an officer's belief that a suspect was armed and dangerous, this Court stated in **Commonwealth v. Mack**, 953 A.2d 587, 591 (Pa.Super. 2008), that "an overt threat by the suspect or clear showing of a weapon is not required for a frisk." The action of a suspect reaching down to his waistband can be a factor contributing to the totality of circumstances forming an experienced officer's reasonable suspicion of the possession of a firearm. **See Simmons**, **supra** at 404.

One of the circumstances providing reasonable suspicion to detain Appellant was his behavior in grabbing his waistband, which indicated to police that he had a weapon. The officers also testified that Appellant stood up awkwardly when the officers instructed him to keep his hands visible, get up from his seat, and accompany them outside of the convenience store. **See** N.T., 8/30/18, at 11-13. In addition, his coat contained bulges consistent with a secreted weapon. Based on the totality of the circumstances, the trial court concluded that the officers had reasonable suspicion to believe that Appellant was both armed and dangerous, and that the frisk was warranted. The record supports the trial court's factual findings, and its legal conclusions are correct. Hence, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/20