J-A27040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
   :
       v.    :
   :
   :
   :
JONATHAN GONZALEZ    :
   :
       Appellant    :    No. 1357 MDA 2021

Appeal from the Judgment of Sentence Entered October 18, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004947-2019

BEFORE:    DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:      **FILED: MARCH 29, 2023**

Appellant, Jonathan Gonzalez, appeals from the judgments of sentence that were imposed after a non-jury trial for possession of a controlled substance with intent to deliver (cocaine), knowing or intentional possession of a controlled substance (cocaine), possession of a small amount of marijuana, possession of drug paraphernalia, and failing to signal.[1] He challenges the denial of a pre-trial suppression motion. Upon careful review, we vacate the judgments of sentence, reverse the trial court's suppression order, and remand for further proceedings.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(31)(i), 35 P.S. § 780-113(a)(32), and 75 Pa.C.S. § 3334(a), respectively.

At 9:09 p.m., on November 6, 2019, Police Officer Christopher Fortin stopped a car that Appellant was driving in the 1000 block of North 11th Street in the city of Reading after the officer viewed Appellant commit a traffic violation three blocks earlier. N.T. 2/18/20, 4-5. Appellant was the sole occupant. *Id.* at 5. Officer Fortin approached the car on the driver's side while another officer named Baker approached on the passenger-side. *Id.* Upon speaking with Appellant, Officer Fortin observed that he appeared "to be very nervous." *Id.* at 6. He noticed that Appellant's chest "was moving rather fast" and that he was sweating. *Id.* Appellant became agitated from the officer's questions about the car and his identification. *Id.* Appellant stated that the car belonged to his friend, but he could not provide that individual's name. *Id.*

The area where the car stop took place was described by Officer Fortin as a "very high drug, high crime area," where the officer had made numerous prior drug arrests. N.T. 2/18/20, 6. During his interaction with Appellant, he saw that Appellant was wearing a fanny pack strapped across his chest. *Id.* During his five-to-six-years as a police officer, he had recovered drugs and weapons from fanny packs on other individuals. *Id.* at 7. When he went to conduct a warrant and license check on Appellant, Officer Baker asked Appellant, "What's in the bag," with respect to the fanny pack. *Id.* Upon his return to the driver's side of the car, Officer Fortin smelled the odor of marijuana when Appellant unzipped the fanny pack. *Id.* Officer Fortin also saw a large amount of money in the fanny pack before Appellant zipped the

- 2 -

pack closed. *Id.* Appellant stated that he had "a little bit of weed in the bag" and had a "medicinal card or [a] medical card."[2] *Id.* at 8.

Officer Fortin later testified that the opening and the closing of the fanny pack was an "indicator" that Appellant "was trying to conceal something such as a weapon or narcotic inside the bag. N.T. 2/18/20, 7-9. He had Appellant exit the car and place his hands on the top of the car for "a quick pat[-]down." *Id.* at 9. Officer Fortin unzipped the fanny pack, placed it on the car roof, and handcuffed Appellant. *Id.* Officer Baker waited with Appellant while Officer Fortin searched the car and found an iPhone. *Id.* Officer Fortin then returned to Appellant and searched the fanny pack. *Id.* Inside, he recovered the money had had seen before, which totaled $8,600, along with marijuana that was packaged in a material that was "gold reflective" on one side and clear on the other side. *Id.* at 8-10. Upon intending to arrest Appellant for the marijuana and search his person, Officer Fortin asked Appellant "if he had anything else illegal on him." *Id.* at 9-10 ("At that point he was under arrest and I was about to search him…"). Appellant admitted to having some cocaine on him. *Id.* at 10. The police recovered a "little over" sixty grams of cocaine from an "airtight bag" in the front right pocket of Appellant's jacket. *Id.*

In his suppression motion, Appellant claimed that the seizure of the evidence from his person was unlawful because: (1) he did not consent to the search; (2) the police did not have reasonable suspicion to detain him and

---

[2] The General Assembly enacted the Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101-10231.2110, with an effective date of May 2016.

search the vehicle upon noticing the odor of marijuana from his fanny pack; (3) the seizure of the evidence from his person was based on a search unrelated to officer safety and the location of a weapon; and (4) the search of his person was not based upon probable cause. Omnibus Pre-trial Motion, 12/31/19, ¶¶ 24-27. He thus claimed that the admission of the evidence recovered after the search of the car and the fanny pack violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Id.* at ¶ 29.

At a hearing on the motion, Appellant's counsel clarified that they were not contesting the validity of the traffic stop but were contesting the search and seizure of the drugs from Appellant's person. N.T. 2/18/20, 3. Officer Fortin testified to the above-summarized facts. *Id.* at 4-10.

The suppression court's findings of facts largely tracked Officer Fortin's direct examination testimony with the exception of its finding that Appellant provided a medical marijuana card to Officer Fortin in between Appellant's closing of the fanny pack and his admission to having some marijuana before Officer Fortin asked him to exit the car. Findings of Fact, 4/21/20, 2-3. On direct examination, the officer was unsure whether Appellant had provided him the card prior to the arrest. N.T. 2/18/20, 9 (Officer Fortin, in response to a question about placing Appellant in handcuffs, testified, "I don't recall if he had shown me his medicinal card at that point, but he did state that he had one."). On cross-examination, the officer agreed that Appellant showed

- 4 -

him a medical marijuana card prior to the officer asking Appellant to exit the car. *Id.* at 12-13. Officer Fortin confirmed that a medical marijuana card, that had been issued to Appellant by the Pennsylvania Department of Health on July 9, 2019, and was marked and moved into evidence, was similar to the card that Appellant had showed him. *Id.* at 12, 27; Defense Exhibit 1 (Medical Marijuana Card). The suppression court resolved the timing of Appellant's display of the medical marijuana card consistent with Officer Fortin's cross-examination testimony. Findings of Fact, 4/21/20, 3. On cross-examination, Officer Fortin also confirmed that he asked Appellant to exit the car because he was "concerned for officer safety" that Appellant may have had a weapon in the fanny pack. N.T. 2/18/20, 13.

Appellant testified that Officer Fortin asked him to open the fanny pack and that, before doing so, he told the officer that he had a medical marijuana card and that the fanny pack contained "a little bit of U.S. currency and a little bit of [his] medical marijuana." N.T. 2/18/20, 20-21. He asserted that he then showed the officer his medical marijuana card and then opened the fanny pack, while he was still in the car, to let the officers look inside the bag. *Id.* at 21. He recalled that the officer conducted a pat-down search of him that did not yield any weapons, a search of the car, and then a search of the fanny pack that yielded the money and the marijuana. *Id.* at 21-22. He alleged that, while he was handcuffed, Officer Fortin searched his pockets resulting in the recovery of more money and the cocaine from his jacket pocket. *Id.* at 22-23. He denied that he admitted to the officer that he had been in

possession of the cocaine.  *Id.* at 23.  The suppression court did not credit that denial.  Findings of Fact, 4/21/20, 3.

After hearing the testimony and the arguments of counsel, the suppression court deferred issuing its ruling to another date so that it could issue an opinion setting forth its findings and conclusions.  N.T. 2/18/20, 30. On April 21, 2020, the court denied the suppression motion.  Order, 4/21/20, 1.  The court concluded that there was reasonable suspicion to extend the traffic stop based on the "high crime and high drug area" in which the events were taking place, the testimony about Appellant appearing nervous, Appellant's inability provide a name for the car's owner, the officer's detection of the marijuana odor, and his observation of the money when Appellant opened the fanny pack.  Conclusions of Law, 4/21/20, 4-6.  The court also included that the factors supporting the reasonable suspicion to extend the traffic stop, in addition to the fact that the stopped car was owned by a third party that was not present in the car, supported probable cause permitting Officer Fortin's search of the fanny pack.  *Id.* at 6-10.

The court issued the following findings of fact:

1.    On November 6, 2019, Officer Fortin was employed by the Reading Police Department.  He was on patrol in full uniform and displaying a badge of authority.

2.    While on patrol, Officer Fortin observed a vehicle commit a traffic violation in the 700 block of 11th Street, Reading, Berks County, Pennsylvania.  This is a high drug and high crime area where Officer Fortin has made numerous drug arrests.

3. Officer Fortin initiated a traffic stop and came into contact with [Appellant], the operator of the vehicle. He was the sole occupant.

4. Officer Baker was also present on scene and he approached the passenger side of the vehicle.

5. Officer Fortin looked inside of the vehicle and observed that [Appellant] appeared nervous. [Appellant]'s chest was moving fast and he was sweating.

6. Officer Fortin asked [Appellant] for his identification and inquired about the vehicle. [Appellant] became agitated by the questioning.

7. [Appellant] stated that the vehicle belonged to his friend but he couldn't provide that individual's name.

8. While interacting with [Appellant], Officer Fortin noticed that [Appellant] was wearing a fanny pack across his chest. During his time as a police officer, Officer Fortin has recovered drugs in fanny packs from other individuals.

9. As Officer Fortin moved away from the vehicle to check [Appellant] for warrants and run his license, Officer Baker asked [Appellant] what he had in the fanny pack. Officer Fortin returned to the vehicle and [Appellant] unzipped his fanny pack. Officer Fortin immediately smelled the odor of marijuana. He also observed a large amount of U.S. currency in the fanny pack.

10. After [Appellant] unzipped the fanny pack, he immediately closed it. [Appellant] informed the officers that he had a little bit of weed and that he had a medical card for it. [Appellant] provided Officer Fortin with a medical marijuana card. Officer Fortin believed that [Appellant] was attempting to conceal a weapon or narcotics.

11. After seeing [Appellant]'s medical marijuana card, Officer Fortin asked [Appellant] to exit his vehicle. [Appellant] was patted down for the safety of the officers and placed into handcuffs. Officer Fortin testified that he was concerned that [Appellant] may have a weapon in the fanny pack.

Officer Fortin also testified that [Appellant] was being investigated for possession of marijuana.

12.	During the pat-down of [Appellant], Officer Fortin did not notice anything indicative of a weapon or contraband.

13.	Due to the odor of marijuana, [Appellant]'s vehicle was searched but nothing else was located. [Appellant]'s fanny pack was also searched revealing marijuana. The marijuana was located in a gold, reflective bag that was see-through on one side. There were no markings on the bag or packaging indicating that the marijuana originated from a dispensary.

14.	Officer Fortin approached [Appellant] and he admitted that he had cocaine on his person. Officer Fortin recovered the cocaine which weighed a little over 60 grams.

15.	In addition to the narcotics, Officer Fortin discovered $8,600.00 in U.S. currency and an iPhone.

Findings of Fact, 4/21/20, 2-3.

Prior to trial, Appellant filed four motions for reconsideration of the denial of the suppression motion. First Reconsideration Motion, 6/8/20; Second Reconsideration Motion, 7/13/20; Third Reconsideration Motion, 11/30/20; Fourth Reconsideration Motion, 1/13/21. The suppression court denied the motions. Order, 7/15/20, 1; Order, 1/14/21, 1; Order, 2/16/21, 1.

On October 6, 2021, Appellant proceeded to be tried without a jury and was found guilty of the above-referenced offenses. Verdict of the Court, 10/6/21, 1. On the same date, the court sentenced Appellant to eleven and one-half to twenty-three months of imprisonment for possession of a controlled substance with intent to deliver and one year of probation for

possession of drug paraphernalia, and fines for possession of a small amount of marijuana and the summary traffic offense; the sentences were stayed pending appeal.[3] Sentence Order (Possession of a Controlled Substance with Intent to Deliver), 10/6/21, 1; Probation Order (Possession of Drug Paraphernalia), 10/6/21, 1; Sentence Upon Conviction (Possession of a Small Amount of Marijuana), 10/6/21, 1; Sentence Upon Conviction (Failing to Signal), 10/6/21, 1. Appellant did not file any post-sentence motions and timely filed a notice of appeal.[4] Notice of Appeal, 10/19/21, 1. He subsequently filed a timely statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Rule 1925(b) Statement, 11/12/21, 1; Rule 1925 Order, 10/29/21, 1

Appellant's lone issue for our review challenges the denial of his evidence suppression claims: "Whether the Court's denial of the motion to suppress and denial of the motion to reconsider the motion to suppress were in error?" Appellant's Brief at 7. Our standard of review on this issue is well-settled:

---

[3] Knowing or intentional possession of a controlled substance merged for sentencing purposes.

[4] Appellant's notice of appeal referenced the judgments of sentence imposed on October 6, 2021, however, the trial court filed an amended/corrected sentencing order on October 18, 2021. In cases where the trial court amends the judgments of sentence during the period it maintains jurisdiction pursuant to 42 Pa.C.S. § 5505, the direct appeal lies from the amended judgments of sentence. *See Commonwealth v. Garzone*, 993 A.2d 1245, 1254 & n.6 (Pa. Super. 2010). Accordingly, the caption of this memorandum reflects that this appeal is from the amended judgments of sentence.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 498-99 (Pa. Super. 2021) (*en banc*), *quoting Commonwealth v. Bumbarger*, 231 A.3d 10, 15 (Pa. Super. 2020) (citation and ellipses omitted).

Appellant's argument section consists of four subparts. First, he argues the Officer Fortin lacked reasonable suspicion to believe that he was armed and dangerous and thus the officer lacked the justification to conduct a limited search for weapons in the car. Appellant's Brief at 15-17. Second, he argues that the search of the car, the fanny pack, and his person were not supported by probable cause. *Id.* at 17-24. Third, he argues that the cocaine recovered from his person should have been suppressed as the fruit of the poisonous tree, *i.e.*, that it was the product of an unlawful arrest and unconstitutional searches. *Id.* at 24-25. Lastly, he argues that the Commonwealth did not prove that exigent circumstances permitted the warrantless search of the car, his person, and the fanny pack. *Id.* at 25. We will review our applicable standards permitting the types of searches conducted in this case and address Appellant's arguments in the order in which they are presented.

The Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures. ***See Commonwealth v. Singletary***, 267 A.3d 1267, 1274 (Pa. Super. 2021). "A warrantless search or seizure of evidence is … 'presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions.'" ***Commonwealth v. Luczki***, 212 A.3d 530, 546 (Pa. Super. 2019) (citation omitted).

> The law recognizes three distinct levels of interactions between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a ***Terry*** stop, ***see Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); and (3) a custodial detention.
>
> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond and therefore need not be justified by any level of police suspicion.
>
> In contract, an investigative detention carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity.
>
> Finally, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest. This level of interaction requires that the police have probable cause to believe that the person so detained has committed or is committing a crime.

***Commonwealth v. Jefferson***, 256 A.3d 1242, 1247-48 (Pa. Super. 2021) (*en banc*) (citations, quotation marks, and ellipses omitted).

"In reviewing whether reasonable suspicion … exists, we must … examine the totality of the circumstances to determine whether there exists a particularized and objective basis for suspecting an individual [ ] of criminal activity." *Commonwealth v. Epps*, 608 A.2d 1095, 1096 (Pa. Super. 1992). Even innocent factors, viewed together, may arouse suspicion that criminal activity is afoot. *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa. 1999); *see also Commonwealth v. Riley*, 715 A.2d 1131, 1135 (Pa. Super. 1998) ("[A] combination of circumstances, none of which taken alone would justify a stop, may be sufficient to achieve a reasonable suspicion."). Moreover, "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. at 27.

An investigative detention may develop into a custodial detention. *Commonwealth v. Wright*, 224 A.3d 1104, 1109 (Pa. Super. 2019). "The key difference between an investigative and a custodial detention is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest." *Commonwealth v. Gonzalez*, 979 A.2d 879, 887 (Pa. Super. 2009) (citation and internal quotation marks omitted). This Court considers the totality of the circumstances to determine if an encounter is investigatory or custodial. *See Commonwealth v. Goldsborough*, 31 A.3d 299, 306 (Pa. Super. 2011).

A motor vehicle stop is generally an investigative detention. *Commonwealth v. Spence*, --- A.3d ----, 2023 WL 2002292, *9 (Pa. Super., filed Feb. 25, 2023). "During a traffic stop, it is inherently reasonable for an officer to order the driver of the vehicle to alight from the car." *Id.*, *citing Commonwealth v. Brown*, 654 A.2d 1096 (Pa. Super. 1995).

> It is well settled that an officer may pat-down an individual whose suspicious behavior he is investigating on the basis of a reasonable belief that the individual is presently armed and dangerous to the officer or others. To validate a *Terry* frisk, the police officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous. In determining whether a *Terry* frisk was supported by a sufficient articulable basis, we examine the totality of the circumstances.

*Commonwealth v. Gray*, 896 A.2d 601, 605-606 (Pa. Super. 2006) (citations and footnote omitted). Under that standard, police may conduct a limited pat-down of a person's outer clothing "in an attempt to discover the presence of weapons which may be used to endanger the safety of police or others." *Commonwealth v. Wilson*, 927 A.2d 279, 285 (Pa. Super. 2007) (citation and quotation marks omitted).

In *Michigan v. Long*, 463 U.S. 1032 (1983), the United States Supreme Court applied the principles set forth in *Terry* to a search of a passenger compartment of a vehicle for weapons. The *Long* Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police

- 13 -

officer possesses a reasonable belief based on specific, and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Id.* at 1049 (citation and internal quotation marks omitted). "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 1050 (citation omitted).

"In evaluating the validity of an officer's investigative or protective conduct under *Terry*, the touchstone of our analysis is always the reasonableness in all circumstances of the particular governmental intrusion of a citizen's personal security." *Long*, 463 U.S. at 1051 (citation, internal quotation marks, and ellipses omitted). "Therefore, the balancing required by *Terry* clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Long*, 463 U.S. at 1051. The *Long* court also emphasized that a *Terry* investigation is "at close range, when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger." *Long*, 463 U.S. at 1052 (citation and internal quotation marks omitted; emphasis in original).

Our courts in Pennsylvania previously recognized the federal automobile exception to the warrant requirement of the Fourth Amendment to the United States Constitution, which permitted police to conduct a warrantless search or seizure of an automobile solely based on probable cause without any need for a separate finding of exigent circumstances. At the time of the car stop in this case, the automobile exception was valid in Pennsylvania pursuant to ***Commonwealth v. Gary***, 91 A.3d 102, 138 (Pa. 2014) (plurality opinion). Since then, our Supreme Court overruled ***Gary*** in ***Commonwealth v. Alexander***, 243 A.3d 177, 2017 (Pa. 2020), concluding that Article I, Section 8 of the Pennsylvania Constitution provides greater protection and only permits warrantless vehicle searches upon a showing of probable cause *and* exigent circumstances. To be entitled to retroactive application of a new constitutional rule, such as the one in ***Alexander***, a defendant must have raised and preserved the issue in the court below. ***See Commonwealth v. Arias***, 286 A.3d 341, 347-48 (Pa. Super. 2022).

With respect to custodial detentions,

> "Probable cause" is a practical, non-technical concept. To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the 'totality-of-the circumstances' test. Pursuant to that test, when presented with an application for a warrant, "[a] magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*Commonwealth v. Barr*, 266 A.3d 25, 40 (Pa. 2021) (citations omitted). "The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007), *quoting Commonwealth v. Rogers*, 849 A.2d 1185, 1192 (Pa. 2004).

In the first part of his argument, Appellant alleges that the police testimony did not support a reasonable belief that he was armed and dangerous for purposes of permitting a protective search for weapons in the car under *Michigan v. Long*. Appellant's Brief at 15-17. Citing *Commonwealth v. Cartagena*, 63 A.3d 294 (Pa. Super. 2013) (*en banc*), he asserts that a nighttime car stop, his appearance of nervousness, and the police officer's awareness of other persons using fanny packs to store weapons, did not support a limited frisk for weapons in the car. Appellant's Brief at 16-17.

As an initial matter, we note that Appellant does not explain how a limited frisk for weapons in the car was material in this instance. Here, the certified record contains only the notes of testimony from the hearing on his suppression motion and does not include any notes of testimony from his trial. The suppression hearing transcript reveals only that a cellular telephone was recovered from the car but does not address whether any information from the phone was ever used as evidence of his guilt in connection with the drug

- 16 -

and drug paraphernalia charges that concerned the contraband recovered from his person. N.T. 2/18/20, 9 ("I believe there was an iPhone, but nothing else relevant inside the vehicle."). With the factual scenario presented in this case, it is not immediately apparent that any contraband recovered from Appellant's person was the fruit of any improper search of the car. Even assuming that any material evidence was recovered from a limited frisk of the car, we would not agree with Appellant's assessment that a limited frisk of the car was not supported by a reasonable belief that he was possibly armed and dangerous.

Appellant fails to make his argument consistent with the facts found by the suppression court. First, he fails to address additional factors for consideration such as his agitation at the officer's questioning of his identity and information about the car and the fact he could not provide the name of the car's third-party owner, beyond saying that it was a friend. N.T. 2/18/20, 6. Second, his characterization of the opening of the fanny pack does not match the officer's testimony and the court's findings. The officer's testimony did not support the assertion that Appellant opened the fanny pack so the officer could view its contents. *Id.* at 7-9. The manner in which he opened and closed the fanny pack made the officer believe that he was trying to conceal something in it. *Id.* at 7 ("Immediately after he -- the defendant opened it, it appeared that he zipped it back closed. I can't speak for why he did that, but that was an indicator to me that he was trying to conceal

something such as a weapon or narcotic inside the bag."). The suppression court's findings noted that he immediately closed the pack after opening it. Findings of Fact, 4/21/20, ¶ 10.

In **Cartagena**, this Court, sitting *en banc*, found that an officer lacked reasonable suspicion to conduct a protective weapons search of the passenger compartment of a vehicle where: (1) the stop occurred at night, (2) the defendant's vehicle had tinted windows, and (3) the defendant appeared to be nervous. **Id.** at 304. The **Cartagena** court noted that there was no testimony indicating, *inter alia*, that the defendant had made furtive movements and that the stop occurred in a high-crime area. **Id.** at 304-06; **see also Commonwealth v. Moyer**, 954 A.2d 659, 669-70 (Pa. Super. 2008) (*en banc*) (holding that evidence that a vehicle's occupants engaged in furtive movements and a defendant appeared nervous was insufficient to establish reasonable suspicion); **Commonwealth v. Reppert**, 814 A.2d 1196, 1206 (Pa. Super. 2002) (*en banc*) (same). The instant case does not closely align with **Cartagena** as Appellant suggests.

Appellant's location in a "high crime area" and his sweating, which implies nervousness, are factors that may be considered in determining whether the police officer possessed reasonable suspicion. **See Commonwealth v. Anderson**, 276 A.3d 282, 295 (Pa. Super. 2022) (*en banc*); **Cartagena**, 63 A.3d at 304 n.24; **Commonwealth v. Foglia**, 979 A.2d 357, 361 (Pa. Super. 2009) (*en banc*). The fact that the car was owned

by a third-party and Appellant failed to provide the name of the owner were additional permissible factors for purposes of a determination on reasonable suspicion. *See Commonwealth v. Kemp*, 961 A.2d 1247, 1254-55 (Pa. Super. 2008) (*en banc*) (among factors providing reasonable suspicion during a car stop for a traffic code violation where a state trooper detected an odor of raw marijuana included the fact that the vehicle used by passenger Kemp and his associate driver was a vehicle owned by a third-party and Kemp did not provide the correct name of the car's owner); *Commonwealth v. Benitez*, 218 A.3d 460, 477-78 (Pa. Super. 2019) (among factors for reasonable suspicion was the fact that Benitez could not identify the owner of the car he was using whom he claimed was his friend). The fact that the traffic stop was happening at nighttime, which was one of the few relevant circumstances present in *Cartagena*, was another adequate factor for consideration. *See In re O.J.*, 958 A.2d 561, 566 (Pa. Super. 2008) (*en banc*) ("The vehicle stop occurred at night, which creates a heightened danger that an officer will not be able to view a suspect reaching for a weapon.").

Moreover, the quick motion to open and close the fanny pack would appear to be akin to furtive movements along a waistline because a person could use a fanny pack to holster and conceal a weapon just as one may tuck a gun or weapon in their waistband. Furtive movements such as that can be an additional acceptable factor for determining reasonable suspicion. *See Foglia*, 979 A.2d at 361 (concluding that reasonable suspicion for an

investigative detention and *Terry* pat-down existed in part because the defendant "touched his waist area and sat down on a stoop behind some females … [and t]he police officer was aware, based upon his experience with armed suspects, that weapons are often concealed in a person's waistband[ ]"). "Among the circumstances that can give rise to reasonable suspicion are the [officer]'s knowledge of the methods used in recent criminal activity and the characteristics of persons engaged in such illegal practices." *Commonwealth v. Bozeman*, 205 A.3d 1264, 1274 (Pa. Super. 2019), *citing United States v. Mendenhall*, 446 U.S. 544, 563 (1980). Accordingly, the officer's stated familiarity with defendants using fanny packs to conceal weapons and contraband was relevant to the suppression court's review. N.T. 2/18/20, 6 (Officer Fortin testifying with respect to fanny packs, "Due to my training and experience, it's known to me that a lot of people who are associated with criminal activity carry narcotics and weapons in those bags."), 7 ("Q. Had you ever in your experience ever recovered drugs and/or weapons from a pack like that? A. Yes, both.").

Based on the totality of the circumstances, we conclude the officers had reasonable suspicion to conduct a pat-down frisk of Appellant and a protective weapons search of the passenger compartment of the car he was driving. *See Commonwealth v. Buchert*, 68 A.3d 911, 916-17 (Pa. Super. 2013) (holding that furtive movement along with extreme nervousness and a night-time stop was sufficient to warrant a reasonable police officer to believe that

his safety was in danger and that the defendant might gain immediate control of a weapon); *see also Commonwealth v. Simmons*, 17 A.3d 399, 404 (Pa. Super. 2011) (finding reasonable suspicion where the traffic stop was conducted at night in a high-drug and high-crime area, and the officer witnessed the defendant make a furtive movement of reaching under his seat and then towards his chest, consistent with concealing a weapon).

Appellant next argues that there was not probable cause to search the car, his person, and his fanny pack. Appellant's Brief at 17-24. He makes the following points: (1) the smell of marijuana alone did not give rise to probable cause; (2) "it [was] not enough for the Commonwealth to rattle off facts and circumstances; the facts and circumstances relied upon must come together and allow the officer to form a particularized suspicion of criminal activity;" and (3) because he produced his medical marijuana card, the officer did not have "a particularized suspicion that criminal activity was afoot, let alone probable cause." *Id.* He reasons that there was a lack of probable cause to permit his arrest and the search of his person and things; the smell of marijuana was the only reason for the search; and the fruits of the "unlawful searches" should have been suppressed. Upon our review of the totality of the circumstances, we agree with Appellant that the evidence did not support probable cause.

Here, the suppression court's findings of fact agree that, after Appellant informed Officer Fortin about his possession of "a little bit of weed" and

provided the officer with a medical marijuana card, the officer asked Appellant to exit the car. Findings of Fact, 4/21/20, ¶ 10-11. Thereafter, the police conducted a pat-down search of Appellant that did not indicate the possession of weapons or contraband, and searched the car and fanny pack. *Id.* at ¶ 12-13. The officer's testimony notes that, at the time of the pat-down search, he unzipped the fanny pack and placed it in on the car's roof. N.T. 2/18/20, 9. Officer Fortin searched the fanny pack, discovering its contents of marijuana and a large amount of money, after searching the car. *Id.*

The suppression court found that there was probable cause to search the fanny pack based on the odor of marijuana coming from it, in addition to the factors addressed in our reasonable suspicion analysis:

> In the case at bar, this court finds that Officer Fortin possessed probable cause to believe that the fanny pack possessed contraband. … Here, in addition to the odor of marijuana emanating from the fanny pack, the following additional factors were present: 1) high crime area; 2) Gonzalez's nervous behavior; 3) the vehicle was owned by a third-party not present in the vehicle; 4) Gonzalez's inability to provide the name of the friend who owned the vehicle; and 5) large amount of U.S. currency present. Therefore, in consideration of the totality of the circumstances, this court finds that Officer Fortin had probable cause to search Gonzalez's fanny pack.

Conclusions of Law, 4/21/20, 10. In this situation, we do not agree that the odor of marijuana was evidence in support of an ongoing crime that permitted a warrantless search of the fanny pack and that the stated factors – absent the odor of marijuana – otherwise supported a finding of probable cause.

In our above analysis of the question of reasonable suspicion and the appropriateness of a vehicle frisk under *Michigan v. Long*, we declined to address the aspect of the odor of marijuana as a contributing factor. This is because our Supreme Court held in *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), that "conduct in which hundreds of thousands of Pennsylvanians are licensed to engage lawfully" is, on its own, "an insufficient basis for reasonable suspicion that criminal activity is afoot." *Id.* at 945. Further, in *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2011), our Supreme Court recognized that the passage of our Medical Marijuana Act ("MMA") "makes abundantly clearly that marijuana no longer is *per se* illegal" and "the odor of marijuana may be a factor, but not a stand-alone one, in evaluating the totality of the circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." *Id.* at 41. In our recent decision in *Commonwealth v. Cunningham*, 287 A.3d 1, 9 (Pa. Super. 2022), we took note of a holding in an unpublished opinion that "the smell of fresh marijuana cannot objectively suggest anything more than possession of a substance that many Pennsylvanians can legally possess."

Appellant produced a medical marijuana card to the officers in between their detection of the marijuana odor and the search of the fanny pack which uncovered a supply of marijuana. Findings of Fact, 4/21/20, ¶ 9-11. After the presentation of the medical marijuana card, the odor should not have been considered as a reflection of possible criminal conduct. The Commonwealth

notes that while Appellant possessed a medical marijuana card, his possession of marijuana was still illegal because it was not in proper packaging required by the MMA. Commonwealth's Brief at 14, *citing* 35 P.S. § 10231.303(b)(6), (8). That assertion does not support a notion that the odor of marijuana supported a reason for a search here because the officers could only confirm the existence of the improper packaging by conducting a search of the fanny pack which required probable cause as a prerequisite to the search. Acceptance of the Commonwealth's argument on that point would permit a search for marijuana upon any odor detection to ensure its proper packaging and that would fly in the face of our Supreme Court's holding in *Barr* and the Commonwealth's established search and seizure jurisprudence.[5]

Given our reasonable suspicion analysis, the police officers undoubtedly could have conducted a pat-down of the fanny pack to deduce whether it contained any weapons that would have placed the officers in danger. That did not occur. The only proof of illegal conduct giving rise to probable cause was the discovery that Appellant's marijuana was not in proper packaging

---

[5] If there were evidence in this case of paraphernalia used for smoking marijuana in the car or the officers had smelled *burnt* marijuana then the existence of a marijuana odor would have a relevant factor for considering reasonable suspicion or probable cause. *See* 35 P.S. § 10231.304(b) ("It is unlawful to: (1) Smoke medical marijuana"); *see also Cunningham*, 287 A.3d at 10 (addressing unpublished decisions of this Court appreciating that the MMA does not permit the smoking of marijuana). The police testimony here did not give any impression that the odor was of burnt marijuana. *See* N.T. 2/18/20, 7, 11.

under the MMA.  To learn that fact, however, the police improperly conducted a warrantless search of Appellant's fanny pack.  That is where the suppression court's analysis went awry.

As for the fanny pack, "[t]he United States Supreme Court has held that searches of closed containers (*i.e.*, personal luggage) intrude upon protected privacy interests as a matter of law."  *Commonwealth v. Perel*, 107 A.3d 185, 189 (Pa. Super. 2014), *citing New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985) ("[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view.") (citation omitted).  In this instance, Appellant used the fanny pack as a repository for his marijuana and a large amount of money and shielded those items privately in a closed container worn on his person.  *See Perel*, 107 A.3d at 190 ("Indeed, the obvious function of an opaque zippered bag is to safeguard the privacy of the personal effects contained therein. … The contents of persons' closed containers are obscured from public view and generally are recognized as private.").  Appellant's subjective expectation of privacy in the contents of this baggage, as evidenced by the totality of the circumstances, is one that society would recognize as reasonable.

Even if there was evidence sufficient to permit an arrest of Appellant – and we do not agree that the evidence supported probable cause – the warrantless search of the fanny pack was improper.  It is axiomatic that absent a warrant, a search may only be justified if there is a recognized exception to

the general warrant requirement. *Commonwealth v. Smith*, 511 A.2d 796, 798 (Pa. 1986). In this instance, there was no applicable exception that would have applied to the fanny pack. To the extent that the officers could look in the fanny pack when Appellant momentarily opened it, they only saw a large amount of money in the container which, by itself, did not give rise to an apparent crime. Accordingly, the plain view exception did not apply. Moreover, there was no obvious basis for an arrest prior to the search of the fanny pack and thus the search incident to arrest exception did not apply.

In any event, there was no adequate basis for a warrantless search. In *Commonwealth v. Shiflet*, 670 A.2d 128, 131-32 (Pa. 1995), our Supreme Court held that the search incident to arrest exception to the warrant requirement did not justify the warrantless search of a passenger's purse under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution. The driver and another passenger of a car in which Shiflet was a passenger were arrested. *Id.* at 129. Shiflet was not arrested at the scene of the car stop. *Id.* When Shiflet accepted a ride from a state trooper to a police barracks, the trooper seized her purse and searched it without any consent requested. *Id.* The trooper found that the purse contained a leather pouch and, upon requesting her consent to open the pouch, the trooper found a small amount of marijuana and drug paraphernalia in it. *Id.* Our Supreme Court affirmed this Court's decision that declined to extend the search incident to arrest warrant

exception to circumstances where the property being search was in the possession of a person who has not been arrested. *Id.* at 131-32. In so holding the Supreme Court noted, "Where is there is no lawful arrest, and therefore no 'reasonable intrusion' on the back of which the warrantless search rides, the intrusion resulting from the warrantless search cannot be accepted lightly." *Id.* at 132.

Applying *Shiftlet* to the case at hand, we cannot view the warrantless search of the fanny pack as proper and permitting the basis for the arrest leading up to the questioning resulting in the recovery of the cocaine from Appellant's person. We are mindful of the dangers that police officers face, especially during nighttime traffic stops that occur in high crime areas. We would not have disagreed with the appropriateness of a *Terry* pat-down of the fanny pack during the investigative detention in this case, however, we fail to see that a warrant exception applied to the search of the fanny pack. The search was not incident to an arrest and, in the absence of the search of the fanny pack leading to the discovery of the improper packaging of Appellant's marijuana, we do not glean a basis for probable cause that would have permitted an arrest and a search of Appellant, his fanny pack, and the car that he was driving. *Compare with Commonwealth v. Runyan*, 160 A.3d 831, 838 n.7 (Pa. Super. 2017) (distinguishing *Shiflet* where police had probable cause to search a vehicle and properly searched a purse contained therein where it was capable of concealing the object of the search).

In the third section of his argument, Appellant asserts that he was subject to an unlawful arrest and an unconstitutional search of his vehicle and, accordingly, the cocaine he subsequently admitted to having on his person should have been suppressed "as fruit of the poisonous tree." Appellant's Brief at 24-25. We agree that the cocaine was discovered as a result of an illegal search.

Here, the Commonwealth argues that the cocaine was "properly discovered on [Appellant's] person incident to arrest" and that the marijuana was discovered in the improper packaging "[i]n the frisk of the fanny pack." Appellant's Brief at 16. The Commonwealth reasons that Officer Fortin had probable cause to arrest Appellant for the possession the marijuana, given its improper packaging, and thus any subsequent search of Appellant was proper as it was incident to his arrest.

We do not agree with the Commonwealth's assessment. The testimony of Officer Fortin does not support the notion that the improper packaging of the marijuana was discovered as a result of a lawful frisk. It indicates that the officer put the fanny pack aside from Appellant during the time for frisking Appellant's person and that the officer then merely went into the fanny pack to observe its contents without any attempt to frisk the fanny pack before or after it was removed from Appellant's person:

> Q. Okay. So let's go back to the stop itself then. After he made the statements about the marijuana and zipped the bag back up, what did you do next?

A.    Like I previously mentioned, that's an indicator to me that someone is trying to conceal a weapon or additional narcotics or evidence.  I had the individual exit his vehicle.  It's common practice for me to have someone place their hands on top of the vehicle so I can do a quick patdown.  ***At that point I was going to detain him in handcuffs, so I unzipped his fanny pack, placed it on the roof,*** and I placed him in handcuffs and I brought him back to the front of my patrol car.

…

A.    So when I went back to him after I searched the vehicle, ***I searched the fanny pack and located the marijuana***, a large amount of U.S. currency.  I went to him.  At that point he was under arrest and I was about to search him, I asked him if he had anything else illegal on him.  And he admitted to something to the extent of he had some coke on him referring to cocaine.

N.T. 2/18/20, 8-9 (emphasis added).

The testimony did not support the Commonwealth's suggestion that the marijuana was recovered as a result of a frisk for weapons.  It suggests that the officer merely opened the fanny pack because he smelled an odor of marijuana coming from the container and he wanted to examine the marijuana.  That happened after Appellant already admitted to having "a little bit of weed in the bag," ***see*** N.T. 2/18/20, 8, and Appellant provided the officer with a medical marijuana card.  ***See*** Findings of Fact, 4/21/20, ¶ 10.  By presenting the medical marijuana card, Appellant essentially rendered inert the criminal nature of the odor of marijuana.  There was no probable cause for an arrest prior to the search of the fanny pack and, absent the discovery of the packaging of the marijuana which was detected after the unlawful search of the fanny pack, there was no basis for a lawful arrest prior to the

search incident to arrest that yielded the cocaine on Appellant's person. Accordingly, we agree with Appellant that the cocaine was the fruit of the poisonous search of the fanny pack.

When an officer effectuates an unlawful arrest, "any evidence seized during a search incident to the arrest must be suppressed. Consequently, the propriety of a search depends upon the validity of the arrest." *Commonwealth v. Clark*, 735 A.2d 1248, 1251 (Pa. 1999) (internal citation omitted). The unlawful arrest following the unconstitutional search of the fanny pack here should have compelled the trial court to suppress the cocaine seized incident to the improper arrest.

In the final section of his argument, Appellant asserts that the Commonwealth failed to articulate any exigent circumstances for a warrantless search of his person, the car, and the fanny pack pursuant to *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020). Appellant's Brief at 25. As acknowledged above, the car stop in this case occurred prior to the issuance of the *Alexander* opinion, at a time in which our Supreme Court's plurality opinion in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), permitted warrantless searches of automobiles so long as police have probable cause. The suppression court acknowledges that Appellant preserved a claim concerning the retroactive application of *Alexander*, referring to its denial of Appellant's final reconsideration motion based on that case. Trial Court Opinion, 12/2/21, 2 n.6. The suppression court and the Commonwealth

advise us that ***Alexander*** did not apply or was inapposite because no items of contraband were found pursuant to a vehicle search. ***Id.*** at 3 n.6; Appellee's Brief at 13 n.2.

***Alexander*** applies retroactively in this case because Appellant asserted its application in a motion for reconsideration below concerning the denial of his suppression motion:

> [W]here an appellate decision overrules prior law and announces a new principle, unless the decision specifically declares the ruling to be prospective only, the new rule is to be applied retroactively to cases where the issue in question is properly preserved at all stages of adjudication up to and including any direct appeal.

***Commonwealth v. Newman***, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) (citation omitted); ***compare with Commonwealth v. Grooms***, 247 A.3d 31, 37 (Pa. Super. 2021) (finding that Grooms waived any claim pursuant to retroactive application of ***Alexander*** where he only disputed the existence of probable cause and did not raise the issue of exigent circumstances or challenged the validity of ***Gary*** in the trial court).

To the extent that the lower court and the Commonwealth quickly dispense with Appellant's ***Alexander*** claim by saying that that case did not apply or was inapposite, we must dwell on that phrasing momentarily in this case. ***Gary***, as the precursor rule to ***Alexander***, had a bearing on more than just items recovered from vehicles – it was also applicable to items in certain containers in vehicles. In ***In re I.M.S.***, 124 A.3d 311 (Pa. Super. 2015), this Court recognized that as our Supreme Court in ***Gary*** had adopted the federal

warrantless automobile search exception, courts in this Commonwealth should also follow the United States Supreme Court precedent that authorized officers to search any containers in a vehicle so long as they have probable cause to search the vehicle generally. *Id.* at 317 (*citing Wyoming v. Houghton*, 526 U.S. 295 (1999)); *see also Commonwealth v. Runyan*, 160 A.3d 831, 837 (Pa. Super. 2017) (under *I.M.S.*, "if [the o]fficer [ ] had probable cause to search the vehicle at issue for contraband he was also permitted to search any container found therein where the contraband could be concealed, including [the defendant's] purse"). In *Commonwealth v. Scott*, 210 A.3d 359 (Pa. Super. 2019), this Court narrowed the authority of law enforcement to search a closed container within a vehicle where the potential illegal activity that afforded the officer probable cause to engage in the search had been accounted for by contraband already collected during the vehicle search. *Id.* at 364 (holding that the odor of burnt marijuana and a small amount of contraband recovered from the passenger compartment of a vehicle was insufficient to establish probable cause to search the trunk of the vehicle).

Presuming that there was probable cause to search the car that Appellant had been driving – and we concluded above that there was not – the application of *Gary* as opposed to *Alexander* would have mattered as it would have not required a showing of exigent circumstances to permit a warrantless search of the car. If a warrantless search of the car was permissible under *Gary* then a search of the fanny pack as a container in the

passenger compartment could have been appropriate under *I.M.S.* and *Houghton*. *Alexander* undoubtedly applied here, given Appellant's assertion of a claim pursuant to that case in a reconsideration motion, so the warrant exception for car searches under *Gary* could not excuse the search of the fanny pack in the absence of a warrant or a combination of probable cause and exigent circumstances.

We find that there was insufficient probable cause for a warrantless search of the fanny pack so a determination on the sufficiency of exigent circumstances under *Alexander* is immaterial. At the same time, we note that the Commonwealth does not bother to argue that there was any support for exigent circumstances for the fanny pack search because it believed that the marijuana was properly recovered as a result of a *Terry* frisk and that the recovery of the cocaine was already covered by the search incident to arrest warrant exception. We disagree that the record supports that a *Terry* frisk of the fanny pack occurred or that the search of the fanny pack was proper. Presuming for the sake of argument that there was probable cause to search the fanny pack, Appellant is correct that the Commonwealth failed to articulate exigent circumstances for the warrantless search of the fanny pack. Because the cocaine was recovered incident to an unlawful arrest as a result of the improper search of the fanny pack, we agree with Appellant that the suppression motion should have been granted.

Judgments of sentence vacated. Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2023